

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

*Antitrust Division*

---

Michael M. Sawers
Assistant Deputy Director
Michael.Sawers@usdoj.gov

Mailing Address:
450 5ᵗʰ Street NW
Washington, DC 20530

DIRECT: 202-803-1217



April 11, 2025

**VIA EMAIL**

Sean O'Connell
Katherine Funk
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
901 K Street, N.W.
Suite 900
Washington, D.C. 20001

Re:  *United States v. James Briar*   JRR-25-194

Dear Mr. O'Connell and Ms. Funk:

This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, James Briar (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office") and the Antitrust Division of the United States Department of Justice (the "Division," and together with this Office, the "Government"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by 5:00 PM on April 14, 2025, it will be deemed withdrawn. The terms of the Agreement are as follows:

Offense of Conviction

1.  The Defendant agrees to waive indictment pursuant to Federal Rule of Criminal Procedure 7(b) and plead guilty to a One Count Criminal Information charging him with knowingly entering into a conspiracy to pay kickbacks in violation of 42 U.S.C. § 8702 and 8707. The Defendant admits that he is, in fact, guilty of these offenses and will so advise the Court.

## Elements of the Offense

2.  The elements of the offenses to which the Defendant has agreed to plead guilty, and which the Government would prove if the case went to trial, are as follows:

<u>Count One: Conspiracy to Provide Illegal Kickbacks in Violation of 18 U.S.C. § 371 and 41 U.S.C. §§ 8702 and 8707</u>

That at some point during the approximate time period alleged in the Information, in the District of Maryland and elsewhere:

(1) The Defendant and one or more persons entered into the unlawful kickback agreement charged in the Information;

(2) the Defendant knowingly and willfully became a member of the conspiracy;

(3) one of the members of the conspiracy knowingly committed at least one of the overt acts charged in the Information; and

(4) the overt act was committed to further some objective of the conspiracy.

## Penalties

3.  The maximum penalties provided by statute for the offenses to which the Defendant is pleading guilty are as follows:

| Statute | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|---|---|---|---|---|
| 18 U.S.C. § 371 | 5 years | 3 years | Greater of $250,000 or twice the gain or loss from the offense | $100 |

a.  Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

b.  Payment: If a fine is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

c.  Collection of Debts: If the Court imposes a fine, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in

which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes the Government to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

## Waiver of Rights

4. The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

a. If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, the Government, and the Court all agreed.

b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c. If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

d. The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

e. If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

    f.  By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

    g.  If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

    h.  By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

    i.  The Defendant has the right to have his case presented to a Grand Jury, which would decide whether there is probable cause to return an Indictment against him. By agreeing to proceed by way of Information, he is giving up that right, and he understands that the charges will be filed by the Department of Justice without a Grand Jury.

  5.  The Defendant agrees to waive any defense available to him relating to the expiration of the statute of limitations. Defendant acknowledges it may be in the interest of the United States and Defendant to delay the filing of charges against Defendant and, therefore, Defendant knowingly and voluntarily waives any defense to charges filed against him that the statute of limitations has expired. That waiver is effective whether Defendant is charged by Information, Indictment, or Complaint. In the event this Agreement is termination, rescinded, voided, or breached, Defendant agrees that this paragraph is irrevocable and survives any such termination, rescission, void, or breach.

  6.  The Defendant understands and agrees that in any further prosecution of him resulting from the release of the United States from its obligations under this Agreement because of the defendant's violation of this Agreement, any documents, statements, information, testimony, or evidence provided by him to attorneys or agents of the United States, federal grand juries, or courts, and any leads derived therefrom, may be used against him. In addition, the Defendant unconditionally waives his right to challenge the use of such evidence in any such further prosecution, notwithstanding the protections of Fed. R. Evid. 410.

### Advisory Sentencing Guidelines Apply

7. The Defendant understands that the Sentencing Guidelines are advisory, not mandatory and the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

### Factual and Advisory Guidelines Stipulation

8. The Government and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A hereto, which the Government would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

**Count One: Conspiracy to Violate 41 U.S.C. §§ 8702 and 8707 (18 U.SC. § 371)**

  a. The parties agree and stipulate that pursuant to U.S.S.G. §§ 2X1.1 and 2B4.1 the base offense level is **8**.

  b. Pursuant to U.S.S.G. §§ 2B4.1(b)(1)(B) and 2B1.1(b)(1)(H), the parties stipulate and agree that the base offense level is increased by **14** because the conduct involved loss of more than $550,000 but less than $1,500,000.

### Role Adjustment

9. The Defendant reserves the right to argue under U.S.S.G. § 3B1.2(b) that he is entitled to a decrease in the offense level based on his alleged minor role in the offences. The Government agrees it will not oppose such an argument.

10. The Government does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. The Government agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty. The Government may oppose any adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, the Government, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.

11. The parties agree that if the Defendant meets all the criteria set forth in U.S.S.G. § 4C1.1, a further 2-level downward adjustment in the applicable offense level will be appropriate at sentencing.

12. There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

13. Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

## Obligations of the Parties

14. At the time of sentencing, the Government and the Defendant reserve the right to advocate for a reasonable sentence, period of supervised release, and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a). The Government and the Defendant reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that the Government or the Defendant deem relevant to sentencing.

## Waiver of Appeal

15. In exchange for the concessions made by the Government and the Defendant in this Agreement, the Government and the Defendant waive their rights to appeal as follows:

   a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges legally can be waived.

   b. The Defendant and the Government knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, or term of supervised release) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, and term or condition of supervised release).

   c. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from the Government or any investigating agency.

### Defendant's Conduct Prior to Sentencing and Breach

16. Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, the Government, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

17. If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) the Government will be free from its obligations under this Agreement; (ii) the Government may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, the Government will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that the Government is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

### Court Not a Party

18. The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. If the Court makes sentencing findings different from those stipulated in this Agreement, or if the Court imposes any sentence up to the maximum allowed by statute, the Defendant will remain bound to fulfill all of the obligations under this Agreement. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

19. This letter, together with the Sealed Supplement, constitutes the complete agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between the Government and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and the Government other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

20.     If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

                        Very truly yours,

                        Abigail Slater
                        Assistant Attorney General

                        Michael Sawers
                        Zachary Trotter
                        Elizabeth French
                        Trial Attorneys
                        Antitrust Division

                        Kelly O. Hayes
                        United States Attorney

                        Sean R. Delaney
                        Darren Gardner
                        Assistant United States Attorneys

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

Date: 04/14/2025

                        James Briar

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

Date: 04/14/2025

                        Sean O'Connell, Esq.

## Attachment A - Stipulation of Facts

The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office and the Division would have proved the following facts beyond a reasonable doubt. The parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.

James Briar is 34 years old and resides in the Commonwealth of Virginia.

From 2012 to the present, Briar has been employed by Company 1. Company 1 is an information technology distributor based in Reston, Virginia. From about 2014 to 2022, Briar was employed as an Account Sales Representative responsible for selling products manufactured by Company 2, an original equipment manufacturer. As an Account Sales Representative, Briar's responsibilities included preparing responses to government solicitations for IT procurements.

Co-Conspirator 1 was an on-site information technology service provider at USG Agency 1. In his role as an on-site service provider, Co-Conspirator 1 cultivated close relationships with USG Agency 1 employees who had authority over procurements.

During the relevant period, from in or about at least September 2020 through in or about at least September 2022, Briar, Co-Conspirator 1, Co-Conspirator 2, and Co-Conspirator 3 (employed by Company 3) agreed that Co-Conspirator 1 would receive kickbacks that were incorporated into USG Agency 1's purchase price and, in exchange, Co-Conspirator 1 would use his close relationships and access to inside information to provide favorable treatment in connection with federal procurements.

Briar knew and understood that it was improper to pay government contractors to influence federal procurements. Briar nonetheless agreed with his co-conspirators to facilitate payment of Co-Conspirator 1 and his company for Co-Conspirator 1's assistance with deals, even though he knew that Co-Conspirator 1 was working inside USG Agency 1 as a contractor. Briar and his co-conspirators referred to the kickbacks payments as "rebates" or "margin." The co-conspirators also informally referred to the kickback payments as the "[Co-Conspirator 1] tax."

To coordinate the payments, Co-Conspirator 1 and Co-Conspirator 3 directed Briar to include a kickback for Co-Conspirator 1 of a certain number of "points," which was shorthand for percentage points of margin from a contract. Once Company 1 received payment, Briar worked internally at Company 1 to ensure that the kickback payments were distributed to Co-Conspirator 1 and his company. In one such example, Briar provided Co-Conspirator 3 with information related to Co-Conspirator 1's bid on a USG Agency 1 solicitation so that Co-Conspirator 3 would "know what the ceiling price is for the entire [order]." On or about September 16, 2020, Co-Conspirator 3 submitted his bid to USG Agency 1, which included a kickback to Co-Conspirator 1. During the course of the scheme, Briar caused Company 1, along with Co-Conspirator 2, and Co-Conspirator 3 to pay at least $600,000 as kickbacks to Co-Conspirator 1.

Briar learned the process of incorporating these "rebates" into government contracts from his supervisor and colleagues. Briar's conduct furthered the interest of his employer, Company 1, and benefited Company 1, by, at least, expediting procurements and retaining original equipment manufacturers (like Company 2) and reseller partners (like Company 3) as clients.

Date: 04/14/2025

James Briar